## PAUL LAYES V. THE STATE.

No. 19439.   Delivered February 16, 1938.

The opinion states the case.

*George W. Edwards*, of San Marcos, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment fixed at death.

The indictment charged appellant with having killed Martin Salazar by shooting him with a pistol on the 21st day of January, 1937. Salazar, Antonio Rodriguez and Santiago Rodriguez lived at Donna in the Rio Grande Valley. They had gone to Fort Worth with a truck load of vegetables which they disposed of at the public market. They remained there about three days, during which time appellant came in contact with them, and requested that they let him return to the Valley with them as he had some friends there. The State's evidence shows that during this time appellant was without funds. Appellant and the three named parties left Fort Worth, traveling together in a truck. When they reached a point near Buda in Hays County, about three o'clock in the morning, appellant claimed to have some trouble with his stomach and asked them to stop in order that he might attend to a call of nature. According to the State's witnesses he got out of the truck and remained a few minutes and when he came back Salazar was under the steering wheel waiting to continue the journey. Appellant shot Salazar twice. The two Rodriguez men ran away from the truck, going in different directions, and appellant fired at them as they ran away. The evidence further shows that appellant knew that Salazar and his companions had something in the neighborhood of a hundred dollars which they had received for their vegetables at Fort Worth. After the killing one of the Rodriguez witnesses saw appellant return to the truck and go to the side where the body of Salazar was lying under the steering wheel.

When Salazar's body was searched after the killing only about four dollars was found on his person. His empty pocket book was found between the point of the killing and a cafe to which appellant went immediately after the killing. When appellant was searched the officers found seven dollars and some odd cents, which he said was all he had. Later on, and after repeated searches, the officers found thirty-two dollars concealed in the lining of his hat. Appellant's report of the matter was that the Mexicans had assaulted him and that he had killed one of them in self-defense and had probably wounded another. To state the facts further in detail seems uncalled for. The story of the Rodriguez men was supported in every detail by other witnesses and by the officers who checked their movements from the time they left Fort Worth up to the time of the killing. The jury was amply warranted in reaching the conclusion that appellant killed Salazar and attempted to kill his companions for the purpose of robbery.

Several bills of exception in the record are in question and answer form, without any certificate of the court that it was necessary for them to so appear. If this were a case carrying other than the death penalty the bills would not be considered, but because of the severe penalty we have examined said bills.

It appears from bill of exception number one that appellant objected to proof of the statement made by Antonio Rodriguez when he saw appellant at a cafe near the point of the killing that "There is the man that killed my brother." At the time this statement was made Antonio Rodriguez had not seen his brother since he saw appellant shooting at him when the brother was fleeing from the place of the killing, and Antonio thought appellant had killed his brother Santiago. As we understand it, appellant was not under arrest at the time Antonio accused him of killing Santiago. If he was under arrest the qualification placed upon the bill by the trial court shows that it was within a few minutes after the killing, and only a short distance from where it occurred and was a part of the res gestae. No error appears from the bill in the light of the qualification and the facts as they are understood.

Other testimony was objected to as shown by bills of exception two, three and four, to the effect that for three or four nights immediately prior to the time appellant left Fort Worth with the Mexicans appellant had stayed at what is called a "cot house," where he paid only a small amount for a night's lodging. This indicated that he was short of funds. This testimony was admissible in view of the fact that immediately after

the killing he had considerable money. The bills further disclose that objection was made to proof that appellant had a short coat of some kind which he left at the "cot house" until he got ready to leave with the Mexicans, and that the coat was rather heavy. We fail to discern how this could have been injurious to appellant. The bills in the respect mentioned reflect no error.

We fail to discern any error reflected by bills of exception numbers five, six and seven. The evidence objected to seems to have been elicited in order to show the movements of Santiago Rodriguez shortly after the killing, and we presume was offered by the State for the purose of supporting the testimony of Santiago and as rebutting the claim made by appellant that the three Mexicans had made an assault on him. None of said bills reflects error.

Bill of exception number eight brings forward complaint of the testimony of Mr. Magruder with reference to certain statements made by appellant which were incorporated in his voluntary confession. It is unnecessary to set Magruder's testimony out in detail or the objections urged to it, in view of the qualification appearing on the bill to the effect that no objections were urged to said testimony, and that the same evidence was introduced from other witnesses without objection on appellant's part.

Bill of exception number nine attempts to bring forward an exception to the court's charge for a failure to limit the testimony of Mr. Magruder to the purpose of impeaching appellant while testifying as a witness in his own behalf. It appears from said bill that no objection or exception of any kind was made to the charge of the court, and that no special charge limiting such testimony was requested. In other words, the court was not apprised that any complaint was being made of his charge until this bill of exception was presented some three months after the trial.

Believing the evidence fully warranted the jury in their verdict of guilty and the assessment of the death penalty, and no errors appearing from the bills of exception, the judgment is affirmed.

*Affirmed.*